## David Miller, et al., v. Calumet Lumber and Manufacturing Company, et al.

### Gen. No. 11.968.

1. MECHANIC'S LIEN—*when original and amended petitions for, do not state different causes of action.* Where the original and amended petitions filed in a mechanic's lien proceeding ask for the same lien upon the same premises, are based upon the same con-

Miller v. Calumet Lumber and Mfg. Co.

tract between the same owner and the same original contractor, and name the same parties defendant, etc., it cannot be said that the amended petition states a new cause of action.

2. STATUTE OF LIMITATIONS—*purpose of.* The underlying purpose of Statutes of Limitations is to prevent the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard by want of prosecution. This is especially true of short limitations, in lien laws.

3. MECHANIC'S LIEN—*when subcontractor's contract sufficient.* A subcontract may be pursuant to the original contract notwithstanding it fixes a time limit for performance beyond that provided in the original contract.

4. MECHANIC'S LIEN—*when notice of claim sufficient.* A notice of a claim for mechanic's lien is not required to state "when the material was to be delivered" nor "that there was any fixed time when it was to be delivered" nor "when payments were to be made."

5. MECHANIC'S LIEN ACT—*how construed.* Provisions of the Mechanic's Lien Act are not to be construed so as to render the remedy thereby provided impossible of enforcement.

6. MECHANIC'S LIEN—*decree for, held sufficient. Held,* that the findings of the decree entered in this case constitute a compliance with section 32 of the Lien Act.

7. MECHANIC'S LIEN—*burden of proving damages in mitigation of the amount of.* Under the Mechanic's Lien Act the burden of proof is upon the owner to establish what damages, if any, should be awarded him in mitigation of the amount claimed by way of lien.

8. MECHANIC'S LIEN—*when decree for, sufficient.* A decree declaring a mechanic's lien in favor of a subcontractor is not erroneous in not making the contractor a party thereto, where it appears from the evidence that the contractor was beyond the jurisdiction of the court.

9. MECHANIC'S LIEN—*nature of proceeding for.* A mechanic's lien proceeding under the Illinois practice is a suit in chancery.

10. DEPOSITIONS—*when competent in subsequent suits.* Depositions taken before a master in a mechanic's lien proceeding prior to the first appeal therein are competent to be admitted at a subsequent hearing of said suit following a reversal therein,—the parties to the issues remaining substantially the same.

11. COSTS—*what not improper taxation of. Held,* that the chancellor in taxing the costs against the losing party did not abuse his discretion by including in such taxation the master's fees incurred upon an earlier hearing which resulted in an erroneous decree, where the master's service consisted largely in the taking of evidence which was used upon the subsequent hearing.

Mechanic's lien proceeding. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed May 29, 1905.

**Statement by the Court.**      This is an appeal from a decree of the Circuit Court of Cook County, giving a mechanic's lien to appellees on premises belonging to appellants and providing for the enforcement thereof.

The original bill of complaint in the cause was filed by the Calumet Lumber and Manufacturing Company November 6, 1901. The Chicago Heights Lumber Company, the other appellee herein, filed an intervening petition November 9, 1901. The bill of complaint was amended December 17, 1901, and the cause came after hearing to a decree in the Circuit Court April 17, 1902.

The allegations of the original bill condensed are: (1) the ownership of certain described premises by defendants, David Miller and Isadore Miller; (2) a written contract between one Frink and them for the erection of a building on said premises, to be completed on or before September 1, 1901, for $5,325 (appending said contract as an exhibit); (3) an oral contract between Frink and the complainant, The Calumet Lumber and Manufacturing Company, for material for said building, for $885, delivery to be completed by complainant within four months from June 24, 1901, and final payment to be made within thirty days thereafter; (4) the complete execution of said agreement by complainant; (5) the furnishing of extras by complainant at the request of Frink to the amount of $35.86; (6) notice of the claim for mechanic's lien by complainant served on appellants October 26, 1901; (7) that neither of the owners has required of Frink any statement of the persons having subcontracts, and that no one has requested of complainant any statement concerning this agreement with. Frink (as provided for in sections 5 and 23 of the Mechanic's Lien Law), that any payments made by appellants to Frink are therefore void as against complainant; (8) the completion of the building by Frink according to his contract, and that

there is consequently due to Frink therefor $5,325; (9) the unknown interest of David Miller, trustee, and certain note holders, The Chicago Heights Lumber Company and William Frink, and the interest, as wives of the owners, of Hannah Miller and Nattille Miller in the premises, all subsequent to that of complainant; (10) that by reason of the foregoing, the complainant is entitled to a lien for $885 and interest, $35.86 and interest, and $100 attorney's fees.

The amendment of December 17, 1901, altered the allegation above numbered 8, so as to make it say that complainant did not know whether Frink had performed his contract completely and asked a disclosure concerning it, and that if Frink had not done so, yet the labor and materials which he had furnished in pursuance of said indenture, were "reasonably worth, according to the original contract price fixed in said indenture, to-wit: $5,325, after deducting so much as shall have been rightfully paid on said original contract by said owners, and damages, if any, that may have been occasioned said owners by reason of the non-fulfillment of said original contract by said Frink if the same was not fulfilled by him; that, as aforesaid, no payments whatsoever in respect to said improvement of said indenture ever were at any time rightfully or otherwise made by said owners to said Frink on account of said indenture or the things done thereunder by said Frink."

The intervening petition of the Chicago Heights Lumber Company set up a contract between Frink and itself for materials to the amount of $777.95, to be furnished within 90 days from June 26, and to be paid for on completion of delivery; alleged that there was $322.22 due on said contract, and unpaid, and that if any payments had been made to Frink and the appellants they were void as against the Chicago Heights Lumber Company, and made in other respects the same allegations as the bill of the Calumet Company, except that there was no statement that any sum was due from the owners to Frink.

The decree declared a lien on the premises described in the bill of $945.12, together with $90 solicitor's fees, in favor

of the Calumet Lumber and Manufacturing Company, and of $332.22, together with $32 attorney's fees in favor of the Chicago Heights Lumber Company.

From this decree the present appellants, David, Hannah, Isadore and Nattille Miller, appealed to this court. That appeal was heard by the Branch Appellate Court and an opinion was filed therein January 19, 1904, reversing the decree and remanding the cause. This opinion is to be found in 111 Ill. App., 651.

It will be seen by reference thereto that certain assignments of error by the appellants were deemed well taken, which complained that there had been no attempt by the appellees to bring themselves within the provisions of section 32 of the Mechanic's Lien Act, under which alone, the Court held, they could, as the original contractor had failed to complete the building, maintain a suit for a lien. The court said: "Neither the petition nor the intervening petition comply with the requirements of section 32, nor is the evidence sufficient to support a decree under that section."

The specifications in the opinion concerning this failure are: (1) that "the names of the parties employed on such house or improvement subject to liens," were not set forth in the petition or intervening petition (which objection, however, it is implied may have been waived by the failure of appellants to demur specially) ; (2) that the amount due from the owner to the contractor was not found or declared in the decree; and (3) that there was no evidence in the record upon which such a decree could be based. The opinion closes as follows:

"The decree of the Circuit Court will be reversed and the cause remanded, with leave to appellees, if they choose to avail of it, to amend their petitions and proceed under the thirty-second section of the Lien Act of 1895."

The appellees filed in the Circuit Court the remanding order entered in pursuance of this direction, and redocketed the case, and on March 16, 1904, the complainant, the Calumet Lumber and Manufacturing Company, amended its bill or petition. The amended bill began with a reaffirmation of

all the allegations contained in the original bill of complaint filed November 6, 1901, with the exception of the paragraph condensed under the heading 8 above, and then proceeded with allegations that for some cause unknown Frink, the original contractor with the appellants, had abandoned the contract which he had for the improvement of their premises, and that at the time of said abandonment had furnished work and materials reasonably worth "according to the original contract price, being the sum of $5,325 specified in said contract," about $4,500; that no amount whatever was at any time rightfully paid on said original contract by the owners, and if any payments whatever were made to Frink, or to any one else, they were made without exercising the rights and powers conferred on the owners under sections 5 and 23 of the Mechanic's Lien Act; that within a few days after Frink abandoned the job, the owners moved into said building, which was practically done, and have occupied it ever since, and that the owners completed the building within said few days, and have not been damaged by reason of Frink's failure to complete his job. Also, that the owners and Frink fraudulently conniving, claim that large sums of money were paid out to Frink on account of said contract, and that the owners were damaged by the non-fulfilment of the contract, and that Frink is, in pursuance of said fraud, kept concealed out of the State so that complainants have never been able to find him; that a few days after Frink abandoned his job, the owners represented to complainant in order to induce it to furnish further material, that there was plenty of money due Frink to pay for all materials complainant had delivered or might deliver. under its contract with Frink; that the conditions between the owners and Frink were such that complainant would receive payment for all such material; that complainant relied on said representations and delivered material afterward used by the owners, and that the defendants are estopped from setting up any claim as to any payment to Frink or any damages from non-fulfilment of his contract by Frink.

The amended bill further avers that the defendants to the

suit were all the persons interested in said premises of whom it knows, including all persons ever employed in said job.

The Chicago Heights Lumber Company, on March 18, 1904, also amended its intervening petition, such amended petition containing substantially the same allegations as the amended bill of the Calumet Lumber Company, and asserting that all parties employed on the house involved had been paid except the Calumet Lumber Company and itself, and that the owners had paid nothing rightfully under said original contract nor sustained any damages by reason of its non-fulfilment.

The appellants demurred generally to the amended bill of the Calumet Lumber and Manufacturing Company, and the demurrer was allowed to stand to Chicago Heights Company's petition as well. The demurrer being overruled and the defendants ordered to answer, the appellants filed answers to both the amended bill and amended intervening petition, alleging that Frink abandoned work on the building involved long before its completion, when very much less than five-sixths of it had been completed, and denying that the work or material furnished by Frink were "reasonably worth, according to the original contract price, about the sum of forty-five hundred dollars." The answer further alleged that appellants completed said building, and that they are entitled to a large sum for damages under the contract in addition to the money expended for the completion of the building, and that any payments by them to Frink were valid and rightful. They denied the allegations of the amended bill on which the claim for an estoppel was based, and said that complainant and intervening petitioner had failed to comply with the requirements of the Mechanic's Lien Act; that they should set forth the names of the parties employed on the building, and that the amended bill and amended intervening petition respectively set up new causes of action different from those set up in the original bill and intervening petition, and that the same were barred by reason of not being filed within the time prescribed in the Mechanic's Lien Act.

Miller v. Calumet Lumber and Mfg. Co.

The cause was referred to a master. By him, over the objection of the appellants, the depositions and exhibits offered in the former hearing before the master, before the cause came to this court the first time, were received in evidence. Other evidence was offered by the appellees and the defendant Wallace, who by a cross-bill set up a mortgage lien on said premises, offered evidence as to such lien (by the subsequent decree recognized as subordinate to appellees' liens, and not involved in this appeal), but the appellants offered no evidence whatever.

The master found the material allegations of the appellees' petitions were proven, and that the work and material furnished by Frink before he abandoned the job, according to the original contract price with the owners, were reasonably worth $4,500; that the evidence did not show how much the Millers actually paid for the completion of said building after Frink abandoned it, nor what payments were at any time made by the Millers to Frink under their contract with him, but that by reason of the failure of the Millers to comply with section 5 of the statute on mechanic's liens, any payments made by the Millers to Frink upon said original contract were void as against the Calumet Lumber Company and the Chicago Heights Lumber Company, and that it had not been shown that the Millers had suffered any damage on account of the failure of Frink to fulfill his contract; that complainant had tried to ascertain Frink's whereabouts and failed, and that so far as complainant had been able to ascertain, there were no parties but itself and the Chicago Heights Lumber Company claiming mechanics' liens on said building. The master recommended a decree for a mechanic's lien on the building and lot in favor of the Calumet Lumber Company for $920.86, and interest, and $90 solicitor's fee, and for $322.22 with interest and $32 solicitor's fee in favor of the Chicago Heights Lumber Company. Fifty-two objections were made by the appellants to the master's report, and overruled by him. They were ordered to stand as exceptions in the Circuit Court, and upon hearing by that court were overruled, and the master's report confirmed. All the find-

ings of fact in said report were refound by the court, and a mechanic's lien with the ordinary provisions and for the enforcement thereof decreed in favor of the Calumet Lumber and Manufacturing Company for $1,043.60 and $90 solicitor's fees and in favor of the Chicago Heights Lumber Company for $367.75 and $32 solicitor's fees. The decree provided that the defendants should pay the costs of suit, including "the sum of $67.25 fixed and allowed as the fees of the master herein on the former reference," and the additional sum of $75 allowed for his fees in the last reference.

From this decree the defendants, David, Hannah, Isadore and Nattille Miller, appealed to this court, where they have made fifty-nine assignments of error.

WILLIAM H. JOHNSTON and ROBERT W. MILLAR, for appellants.

CHESTER FIREBAUGH, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

A motion to dismiss the appeal or to affirm the decree of the Circuit Court with statutory damages was made by the appellants in this cause soon after it was entered in this court. The motion was reserved to the hearing in due course. It is now denied. We have considered the appeal on the merits. The objections made to this course because of the alleged informalities in the transcript of the record, we do not think are well taken. By the filing of an additional record by appellants on their suggestion of diminution, and by their also filing under leave of this court the transcript on the former appeal, anything in these objections which might otherwise be material has been met.

The first of the alleged errors of the Circuit Court which is insisted on and argued by the appellants' counsel in this appeal, is that the complainant by its amended bill and the intervening petitioner by its amended petition have each made an entirely new case, distinct and different from the cases set up by the original bill and original intervening petition, and that since the amended bill and amended petition

were not filed within four months after the dates fixed for final payment under the contracts set up therein, respectively, the complainant and intervening petitioner are barred from maintaining this suit. We do not so view the matter. We think the Circuit Court was right in holding that no new or different causes of action were stated in the amended petitions. They asked for a mechanic's lien, under the statute of Illinois, against the property of certain defendants; the original petitions had asked for the same lien against the same premises. The original and amended petitions were based on the same contracts between the owners and the original contractor, and the same contracts between that original contractor and the petitioners, and described those contracts and the work and materials they respectively called for in the same way. The amended petitions made no new or different parties. We do not see how it can be successfully contended that the later petitions are anything more than the less defective and more artificial method of stating their claim, which is always allowed by way of amendment to parties plaintiff, without rendering them liable to the consequences of having stated a new cause of action.

The gist of the reasons given by the Branch Appellate Court when it reversed the former decree in this cause, was that the amount due from the owner to the original contractor must be ascertained and found before there could be a decree in favor of the claimants. "In this case," the court says, "the amount due from the owner to the contractor is not found or declared in the decree, nor is there any evidence upon which such a decree can be based." It is true that the court also says, "Neither the petition nor the intervening petition comply with the requirements of section 32," but that the court did not think that their amendment would be made futile and ineffective by the four months' limitation is shown by its action in, of its own motion, granting leave for such amendment. It may be conceded that the Circuit Court was bound by this action only to allow the amendments, and had power to have afterward declared them useless, but in so doing it would certainly have disagreed with

the Branch Appellate Court. We agree with the view of that court and of the Circuit Court. The underlying purpose of statutory limitations is to prevent the unexpected enforcement of stale claims, concerning which persons interested have been thrown off their guard by want of prosecution. This is especially true of the short limitations in lien laws. Nothing could be more different from such a situation than the one in this case.

The next contention of the appellants to be noticed is that the contract between Frink and the Calumet Lumber and Manufacturing Company shows on its face that it was not in pursuance of the purposes of the original contract between the Millers and Frink, and therefore does not fall within the Lien statute. The ground for this argument is that the Calumet Company contract (which was oral) included (by reference) the terms of an endorsement upon the estimate on which it was based, to the effect that the delivery of the material furnished was to be completed by the Calumet Company within four months from June 24, 1901, while the contract between the owners and Frink provided that the entire building should be completed on or before September 1, 1901. Hence it is urged the first could not be "in pursuance of the purposes" of the second.

We do not think this conclusion follows. The same estimate which contains "the time memorandum" shows on its face that the materials were contracted for to be delivered to the appellants at the premises involved in this suit, and were so delivered there. The larger part of them had been delivered before September 1, and that part of them delivered after September 1 was so delivered in compliance with the direct request of the appellants after Frink had abandoned the job—a request made in a complete recognition of the character of the Lumber Company's contract—as "in pursuance of the purposes" of Frink's contract with appellants.

The contract between Frink and the Calumet Lumber Company was not inconsistent with the contract between appellants and Frink. There was nothing in it to prevent

the Calumet Lumber Company from delivering all the material before September 1, 1901. It simply provided a date before which it must be delivered, or the contract would be broken. The material was presumably to be furnished as called for, and a time limit might be as much for the protection of Frink as for the vendor's, in order that he might not be overrun with material before he was ready. He may have known that there was no doubt of his being able to get the material as rapidly as he could possibly need it. At all events, as it has been decided in Von Platen v. Winterbotham, 203 Ill., 205, that a subcontract in which there is no time limit whatever may be held to be in pursuance of the purposes of an original contract in which a time for completion is specified; it certainly is not the law that a subcontract in which such a time limit is provided, although the time allowed runs a little beyond that allowed by the original contract, cannot be so held. This objection does not seem to be urged against the intervening petitioner, the Chicago Heights Lumber Company, although by its contract, as alleged, it was to complete the delivery before September 24, 1901. Perhaps this is because the proof shows that its material was in fact all delivered before August 26. In any event we do not regard the position of appellants in this regard tenable as to either of the appellees' contracts, and it is not necessary for us to consider whether or not it is still open to them to take it in this second appeal.

The third objection of the appellants to the decree is that the notice on which the Chicago Heights Lumber Company's right to a lien depends is not in compliance with the statute. We see no merit in this point. Counsel say that the notice does not state "when the material was to be delivered," nor that there was "any fixed time when it was to be delivered," nor "when payments were to be made." The statute does not require that the notice should contain this information. It does provide that it shall state when the amount claimed to be due became due, and the Appellate Court of the Second District in Hurtt v. Sanders Bros. Mfg. Co., 99 Ill. App. 665, cited by appellants, decided that a notice was defective

which did not contain such a statement. The language used in the opinion in that case is simply the demonstration by the writer of it that the notice neither contained the required statement, nor, in other allegations, the means of obtaining the information.

The next complaint of appellants is that the reasonable worth of the work and materials furnished by Frink before his abandonment of the job has not been established by competent proof. The complaint is not well founded.

It is needless to discuss the application of the doctrine of Sohns v. Murphy, 168 Ill., 346, to section 32 of the Act of 1895, for we are of the opinion that the testimony of the three witnesses on this matter (and especially that of Mr. Decker), is amply sufficient to sustain the decree under the most rigid construction of the law that appellants could claim. It will not be presumed to have been the intention of the Legislature to make impossible a remedy for which it was carefully providing. We may say, moreover, that we think Sohns v. Murphy greatly in point.

It is further objected to the decree that it does not find the amount due from the owners to the original contractor. We think that the findings of the decree, in which are incorporated the findings of the master's report, do sufficiently, under section 32 of the Lien Act and under the opinion of the Branch Appellate Court in the former appeal, "find and declare" how much is due from the owners to the contractors. That sum, by the finding of the master, is said to be $4,500, and it is also found that all payments, if any were made, to Frink are void under the law, and are therefore as though not made, so far as the appellees are concerned. This ascertains and fixes the amount due as $4,500, and the claims of the original and intervening petitioners not aggregating this amount, nothing more seems necessary to determine their rights under section 32. That section says that a "balance is to be divided between the claimants in proportion to their respective interests to be ascertained by the court." That "balance" is to be the amount "the work and materials shall be shown to be reasonably worth according to the original

contract price"—in this case found to be $4,500—less "so much as has been *rightfully* paid on said original contract by the owner," and less damages, if any, "that may be occasioned the owner by reason of the non-fulfillment of the original contract."

The master and court have found on sufficient evidence, it would appear, that under the definition in section 33 of the Act of rightful payments, no money has been rightfully paid on account of this building so far as the appellees' interests are concerned. It has also found that no damages to the owners appear. These findings fix the amount due to the contractor from the owner at $4,500.

It is urged that payments may have been made on account of this building by the owners, not "to the contractor or his order," and that these, under section 33, would be rightful, and that there might have been damages not shown by the evidence, which payments and damages, if there were such, should have been deducted from the $4,500.

It is enough to say concerning this, that by the evidence before them, the master and the court were justified in their findings that there were no such payments or damages proven, and that it was the duty of defendants, after the case made by appellees was closed, to prove any such payments or damages, if any such there were.

The showing made by appellees was quite sufficient *prima facie* for recovery under the Act; and it would be a highly unreasonable construction of that Act which would put upon the parties plaintiff the burden of proving precise and specific negatives in matters concerning which the parties defendant had all the information at hand, and the ability at once to refute the *prima facie* case if it were untrue. Particularly is this the case in regard to damages. It would be impossible for petitioners to negative all possible damage which might in imagination spring from the abandonment of the original contract, but very easy for defendants to show it if it existed. It cannot be properly said that the indefinite evidence, claimed by appellees to show that the premises were not ready for occupancy until October, proved the stipulated

damages under the original contract of $10 a day for a number of days. How much of the delay, if there were any, was due to the abandonment of the contract, and how much to the fault of the owners, if there were such fault, in not paying the contractor, or how much to alterations (which the contract provides may extend the time), if there were any, are matters which do not appear. If the Act, when speaking of "damages that may be occasioned the owner by reason of the non-fulfilment of the original contract," can be in any event construed to refer to stipulated damages for delay in the nature of a penalty, which we do not believe, certainly it is for the damaged party to show his right to them under the contract.

It is further suggested by appellants that because the decree does not include Frink, who was proven to have left the jurisdiction and to be in parts unknown, it cannot stand against the property of appellants because the statute provides that "the decree shall be entered against the owner and contractor." Such a construction of the Act is unreasonable. The decree seems to us, under the proof made of the contractor's absence, sufficient and proper in form. The objection noted is not among the assignments of error, unless it may be considered as covered by the general one numbered 59.

It is argued that the depositions taken before the master before the first appeal were improperly admitted in evidence by him at the last hearing. We do not think that there was any error in this. The rule in chancery (and a mechanic's lien suit is a suit in chancery under our practice) undoubtedly is that depositions taken in a prior suit, where the parties and issues are substantially the same, may be used. Counsel have cited no authority, and we know of none, which would render such depositions taken at a prior hearing of the same suit incompetent.

It is suggested that there is a difference in this regard between depositions taken under a *dedimus* and those taken before a master on a general order of reference. We see no reason why there should be, and the only authority cited by

counsel (Daniell's Chancery Practice) is to the contrary. Opportunity for cross-examination was given to and used by the appellants when these depositions were taken, and we see no injustice and nothing irregular in their use in the second hearing.

Objection is made to the allowance in the costs of the master's fees for the first hearing. We do not think that section 18 of the Act, as argued by appellants' counsel, prevents the exercise of the chancellor's discretion in a case like this. The appellants were ultimately "the losing party," and it was, in the opinion of the chancellor, "an equitable taxation of the costs of the proceedings," to include these fees in the decree against them. We do not think we should be justified in disturbing it.

The decree of the chancellor in the Circuit Court will be affirmed.

*Affirmed:*